IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| STEVEN HUMBERT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HENRY CLAY TOWNSHIP, LAWRENCE )<br>HARTMAN JR., JESSE BATES II, JERROD )<br>L. HOSTETLER, TAMMY STENSON, )<br>)<br>Defendants, | 2:25-CV-00011-MJH |

## MEMORANDUM OPINION

On January 3, 2025, Plaintiff, Steven Humbert, filed this action against Defendants, Henry Clay Township, Lawrence Hartman, Jr., Jesse Bates II, Jarrod Hostetler, and Tammy Stentson. (ECF No. 1). Plaintiff brings six claims pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986[1] as well as two state law claims for abuse of process and civil conspiracy. (*Id.*). On February 21, 2025, Plaintiff filed a Petition for Preliminary Injunction and accompanying brief. (ECF Nos. 10 & 11). On March 10, 2025, Defendants filed their responses to Plaintiff's Petition for Preliminary Injunction. (ECF Nos. 19-21). On July 21, 2025, Defendants filed Motions to Dismiss the Complaint and accompanying briefs. (ECF Nos. 33-36). On August 11, 2025, Plaintiff filed his Briefs in Opposition to Defendants' Motions to Dismiss. (ECF Nos. 37-38). On August 18, 2025, Defendants Jesse Bates, Lawrence Hartman, Jr., Henry Clay Township, and Jarrod Hostetler filed their Reply. (ECF No. 39). All the issues related to the Motions to Dismiss

---

[1] Plaintiff voluntarily withdrew his claims under § 1985(3) and § 1986, at Counts IV and V of the Complaint, against all Defendants. (ECF No. 37, at 14); (ECF No. 38, at 9). Accordingly, those claims are dismissed.

1

have been briefed and are ripe for disposition. For the following reasons, Defendants' Motions to Dismiss will be denied in part and granted in part.

I.  **Statement of Facts**

Plaintiff, Steven Humbert, opened his auto sales business, Marclay Motors, in 2017. (ECF No. 1, at ¶ 12). On August 10, 2017, Plaintiff applied for a Zoning Permit with the Henry Clay Township Zoning Officer to begin operating his auto business. (*Id.* ¶ 14). On August 11, 2017, Plaintiff's Zoning permit was granted. (*Id.* ¶ 15). On August 21, 2017, the Henry Clay Township Building Code Official granted Plaintiff a "Uniform Construction Code Certificate of Occupancy & Use," and certified "[t]he . . . building or structure has been inspected and found to be in compliance with the Pennsylvania Construction Code Law (1999, November, P.L. 491, No. 45) . . . [.]" (*Id.* ¶ 16). Plaintiff alleges that he submitted a Land Development Plan with his permit. (*Id.* ¶ 17). On May 7, 2019, Henry Clay Township approved Plaintiff's Land Development Plan. (*Id.* ¶ 19).

Plaintiff alleges that, after he received the proper permits, he began to build a car lot on his property, accessible from an existing gravel driveway. (*Id.* ¶ 24). Plaintiff alleges that his neighbor, Lawrence Hartman Sr., and neighbor's son Lawrence Hartman, Jr., objected to the construction of the auto sales business, because they believed the gravel driveway was on Lawrence Hartman Sr.'s property. (*Id.* ¶ 26). Lawrence Hartman Sr. filed a state action against Plaintiff regarding this dispute. (*Id.* ¶ 27). Plaintiff alleges his other neighbor, Jesse Bates, also opposed the construction of the auto business, because he operates his own auto sales business in Markleysburg, PA. (*Id.* ¶ 28). Plaintiff alleges that Lawrence Hartman Jr. and Jesse Bates attended multiple meetings of the Henry Clay Township Board of Supervisors to voice their opposition to the approval of Plaintiff's zoning permit applications and Land Development Plan.

2

In 2019, Jesse Bates was elected to the Henry Clay Township Board of Supervisors. (*Id.* ¶ 32). In 2023, Lawrence Hartman Jr. was elected to the Board of Supervisors. (*Id.* ¶ 33). Plaintiff alleges that Mr. Bates and Mr. Hartman forced out the last remaining incumbent Supervisor and appointed Jerrod Hostetler in his place. (*Id.* ¶ 34). Plaintiff alleges that Mr. Hartman, Bates, and Hostetler, (collectively, "County Supervisor Defendants") then appointed Tammy Stenson to serve as Henry Clay Township's Zoning Officer. (*Id.* ¶ 36). Plaintiff alleges that County Supervisor Defendants held private meetings and communications, discussing how to target Plaintiff's business. (*Id.* ¶ 38). Plaintiff further alleges that County Supervisor Defendants "requested, directed, instructed, ordered, and/or commanded Tammy Stenson to revoke Plaintiff's permits and order Plaintiff to cease and desist operation of his used auto sales business." (*Id.* ¶ 39).

On September 9, 2024, Defendant Stenson sent Plaintiff a letter revoking his occupancy and zoning permits "effective immediately." (*Id.* ¶ 41). Plaintiff alleges that the revocation letter made "material misrepresentations and accused Plaintiff of operating his business without submitting a land development plan for approval." (*Id.* ¶ 42). The letter directed Plaintiff to "cease all business operations for Marclay Motors as of September 15, 2024." (*Id.* ¶ 43). Plaintiff alleges that he was not provided any advance notice before his permits were revoked, and he was ordered to cease operation of his business. (*Id.* ¶ 46). Plaintiff alleges that all Defendants acted in concert to pressure Plaintiff into settling his land dispute with Lawrence Hartman Sr., to eliminate a competing business for Defendant Bates, and for Defendants Hostetler and Stenson to stay in the good graces of Defendants Hartman and Bates, who appointed them to their positions. (*Id.* ¶¶ 46-49).

## II.    Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d

902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

I. **Preliminary Injunction Standard**

F.R.C.P. 65(a) empowers the Court to issue a preliminary injunction upon notice to the adverse party. Additionally, F.R.C.P. 65(b) permits the Court to issue a temporary restraining order without written or oral notice to the adverse party in certain circumstances. To obtain a preliminary injunction, the petitioner must demonstrate "(1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002). If these two threshold showings are made, the District Court then considers, to the extent relevant "(3)

the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Delaware River Port Auth. v. Transamerican Trailer Transp.*, Inc., 501 F.2d 917, 920 (3d Cir. 1974).

## II. Discussion

### A. Section 1983 Claims and *Monell* Liability

Plaintiff brings three claims under 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment substantive and procedural due process rights and as his equal protection rights against all individual defendants and Henry Clay Township. Defendants argue that Plaintiff fails to allege sufficient facts to establish that the individual Defendants acted under the color of state law. (ECF No. 36, at 10). Defendants further argue that Plaintiff fails to allege facts to establish *Monell* liability applies to Henry Clay Township, because Plaintiff's allegations do not show that any of the individual defendants acted pursuant to a municipal custom or policy. (*Id.* at 13). Plaintiff argues that he alleges sufficient facts to establish that the individual Defendants acted under the color of state law and that the individual defendants' actions constituted a policy or custom for the purposes of *Monell* liability. (ECF No. 37, at 5, 9-10).

Section 1983 provides a federal cause of action for plaintiffs alleging constitutional violations against "local governmental bodies and other state officials*." Rogin v. Bensalem Township*, 616 F.2 680, 686 (3d Cir. 1980). To establish a Section 1983 claim, a plaintiff must prove two elements: "(1) that the conduct complained of was committed by a person acting under the color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the constitution or laws of the United States." *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state

6

law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotations and citations omitted). "If an individual is possessed of state authority and purports to act under that authority, his action is state action. It is irrelevant that he might have taken the same action had he acted in a purely private capacity or that the particular action which he took was not authorized by state law." *Griffin v. State of Md.*, 378 U.S. 130, 135, 84 S. Ct. 1770, 1773, 12 L. Ed. 2d 754 (1964). "Informal, behind the scenes exertion of state authority is as much within the scope of § 1983 as the more usual examples of formal and open action leading to the denial of federal rights." *Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 126 (3d Cir. 2016) (Unreported Case).

For a local government entity, such as Henry Clay Township, to be found liable under § 1983, the plaintiff is required to prove that the adverse action taken against the plaintiff was a result of a state policy or custom, not the result of an individual actor. *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020).

In defining "policy" or "custom," the Third Circuit has stated:

> [T]here are two ways that a plaintiff can establish municipal liability under § 1983: policy or custom. Under Monell, a plaintiff shows that a policy existed when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A plaintiff may establish a custom, on the other hand, by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. In other words, custom may be established by proving knowledge of, and acquiescence to, a practice.

*Watson v. Abington Twp.*, 478 F.3d 144, 155-56 (3d Cir. 2007) (internal quotation marks and citations omitted). An individual's conduct is considered official policy or custom when (1) the individual acted pursuant to a formal government policy, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-

maker renders the individual's conduct official for liability purposes by delegating the authority to speak or act on behalf of the government to the individual, or by ratifying the actions of the individual after it occurred. *See Hill v. Borough of Kutztown,* 455 F. 3d 225, 245 (3d Cir. 2006).

We first turn to whether the individual Defendants acted under the color of state law. Plaintiff has alleged that County Supervisor Defendants abused their positions on the Henry Clay Township Board of Supervisors when they directed Defendant Stentson, who they appointed as a County Zoning Officer, to revoke Plaintiff's building permits to personally benefit the County Supervisor Defendants. (ECF No. 1, at ¶ 39). These allegations contend that the County Supervisor Defendants used their county positions to influence the actions taken against Plaintiff. At this stage, accepting all facts alleged by Plaintiff as true, such allegations are sufficient to establish that County Supervisor Defendants were acting under the color of state law.[2]

Next, we must determine whether plaintiff has alleged sufficient facts to establish Henry Clay Township could be held liable under *Monell*. Plaintiff alleges that County Supervisor Defendants' actions constitute official policy or custom of Henry Clay Township. (ECF No. 1, at ¶¶ 52-53). Defendants argue that there is a review mechanism available to Plaintiff regarding the cease-and-desist letter that was issued to him; and thus, the alleged actions of the County Supervisor Defendants were reviewable and not final so *Monell* liability does not apply. (ECF No. 36, at 13).

Plaintiff alleges that, County Supervisor Defendants, in their capacity as County Supervisors, directed Defendant Stenson to revoke Plaintiff's zoning permits. County Supervisor Defendants have final decision-making authority within Henry Clay Township. County

---

[2] Defendant Stentson does present an argument regarding state action in her Opposition Brief. Accordingly, for the purposes of this opinion, Plaintiff has pled sufficient facts to allege that Defendant Stenson acted under the color of state law.

8

Supervisors have the authority to appoint the Zoning Board Officer. Plaintiff alleges that County Supervisor Defendants appointed Defendant Stenson and directed her to target Plaintiff's business though zoning permit violations. Such allegations, at this stage of litigation, are enough to establish a policy or custom such that Henry Clay Township may be liable under *Monell*.

### B. Fourteenth Amendment Substantive Due Process Claims

Now that we have established state action, we can address the claims themselves. Plaintiff brings Fourteenth Amendment Substantive Due Process claims against all of the Defendants. The County Supervisor Defendants argue that Plaintiff fails to allege sufficient facts to establish a Fourteenth Amendment substantive due process claim, because Plaintiff's allegations do not properly allege that the County Supervisor Defendants' conduct deprived Plaintiff of any property rights under the Fourteenth Amendment. (ECF No. 36, at 9-10). Further, all Defendants argue that Plaintiff does not allege facts to show that any of Defendants' conduct "shocks the conscience." (ECF No. 36, at 12). Plaintiff argues that he has pled sufficient facts to establish that he was deprived of a property interest protected under the Fourteenth Amendment and that such deprivation could plausibly "shock the conscience." (ECF No. 37, at 7-9); (ECF No. 38, at 2-5).

The Fourteenth Amendment states that a State shall not "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. The Due Process Clause contains a substantive component that prohibits arbitrary and wrongful government conduct regardless of whether the plaintiff was accorded adequate procedures. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "[T]he core of the concept" of substantive due process is "protection against arbitrary action." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "[T]he substantive component of the Due Process Clause is violated by executive action only when it

9

can property be characterized as arbitrary, or conscience shocking, in a constitutional sense. *Id.* "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level" *Id.* at 849.

Land ownership "is a property interest worthy of substantive due process protection." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995), *abrogated on other grounds United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).

> [I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a landowning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrarily or irrationally reached.

*Id.* "The use and enjoyment of property itself is a sufficient property interest on which to base a due process challenge to a permit approval process, and that a plaintiff need not show entitlement to the actual permit*." Halchak v. Dorrance Twp. Bd. of Supervisors*, 646 F. Supp. 3d 4 571, 589 (M.D. Pa. 2022).

First, the Court must determine whether Plaintiff alleged facts sufficient to establish that he had a property interest that would be protected by substantive due process. Plaintiff alleges that he applied for a zoning permit on or about August 10, 2017, which was approved on August 11, 2017. (ECF No 1, at ¶¶ 14-15). On August 21, 2017, Plaintiff was granted a Certificate of Occupancy. (*Id.* ¶ 16). Plaintiff further alleges that he submitted a Land Development Plan with his application for a zoning permit, which was approved by Henry Clay Township on May 7, 2019. (*Id.* ¶¶ 17-19). Plaintiff alleges that he operated his business, Marclay Motors, relying upon the Zoning Permit he was given in 2017. (*Id.* ¶ 21). Plaintiff further alleges that he has complied with all applicable laws, ordinances, and regulations since he was awarded his Zoning

10

Permit and Certificate of Occupancy. (*Id.* ¶ 23). Taking the facts alleged to be true, Plaintiff has alleged sufficient facts to establish he had a property interest worthy of substantive due process protections.

Next, the Court must determine if the alleged actions taken by the County Supervisor Defendants and Defendant Stenson "shock the conscience." Plaintiff argues that the facts of the present case are analogous to the facts of *Ecotone Farm LLC v. Ward,* 639 F. App'x 118, 124 (3d Cir. 2016). In their Reply, the County Supervisor Defendants argue that said case is a non-precedential decision; and thus, this Court should not consider it in its analysis. However, given the similarities of the facts in *Ecotone Farm* in relation to the facts in the case at hand, the Court finds the case's reasoning to be persuasive as regards the shock the conscience standard vis-à-vis the zoning determinations. In *Ecotone Farm*, the plaintiff alleged that he had a long-standing dispute with his neighbors over an easement of a shared driveway with his neighbors, which resulted in a lawsuit. *Id.* at 121. Plaintiff's neighbor was eventually elected to the township committee, and plaintiff alleged that his neighbor directed the township engineer to interfere with renovation projects on plaintiff's property that the township had previously approved. *Id.* The Court in *Ecotone Farm* relied on allegations that accused defendants of "conspiring to use their government positions to harass them repeatedly and obstruct full enjoyment of their land over the course of several years, motivated by personal vendettas and the expectation that their own private interests would be advanced." *Id*. at 126. The *Ecotone Farm* Court concluded that such allegations "rise above the mere allegation of an improper motive and depict corruption and repeated abuse of government power with the deliberate aim of harming someone. They are conscience-shocking and sufficient to sustain a substantive due process claim at the pleadings stage." *Id.*

11

Here, like in *Ecotone Farm*, Plaintiff alleges that Defendants abused their powers as County Supervisors and the Zoning Board Officer in pursuit of their own personal gain. (ECF No. 1, at ¶¶ 32-41, 47-53). While Plaintiff's allegations are not as specific as those in *Ecotone*, he alleges sufficient facts to make it plausible that Plaintiff has sufficiently pled a substantive due process claim such that discovery on the matter is proper. Accordingly, taking the allegations within the Complaint as true, Plaintiff has alleged sufficient facts, at this stage, to establish that Defendants' actions "shock the conscience." Defendants' Motions to Dismiss Plaintiff's Fourteenth Amendment Substantive Due Process Claims, at Count I of the Complaint, will be denied.

### C. Procedural Due Process Claims

Plaintiff brings Fourteenth Amendment Procedural Due Process claims against all Defendants. Defendants argue that Plaintiff does not allege sufficient facts to establish a Fourteenth Amendment procedural due process claim, because Plaintiff could appeal the Zoning Board's decision to revoke his Zoning Permit to the Court of Common Pleas of Fayette County. (ECF No. 36, at 15). Defendant Stenson further argues that the procedural due process claims against her should be dismissed, because she "was simply enforcing compliance with the Zoning Ordinance and SALDO, by requiring a proper land development plan from Plaintiff" when she issued the cease-and-desist letter. (ECF No. 34, at 10). Defendant Stenson contends that Plaintiff could have submitted a land development plan for approval after receiving the cease-and-desist letter. (*Id.* at 10). Plaintiff recognizes that when zoning permit applications are denied, a judicial mechanism exists that satisfies procedural due process requirements. (ECF No. 37, at 11). However, Plaintiff argues that he does not allege a claim that his application was denied; instead, Plaintiff alleges that his zoning permit was revoked without advance notice and an opportunity to be heard, which is required by Henry Clay Township's own ordinances. (*Id.*).

12

In order to successfully establish a prima facie case of a procedural due process violation, a plaintiff must show: (1) there has been a deprivation of the plaintiff's liberty or property, and (2) the procedures used by the government to remedy the deprivation were constitutionally inadequate. *See United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003). Remedial procedures will be deemed constitutionally inadequate if "they contain a defect so serious [as to] characterize the procedures as fundamentally unfair." *See Leonard v. Owen J. Roberts Sch. Dist.*, 2009 WL 603160, at *4 (E.D. Pa. Mar. 5, 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 341 (1987) (Stevens, J., concurring)). "The focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *K.S.S. v. Montgomery Cnty. Bd. of Comm'rs.*, 871 F.Supp.2d 389, 397-98 (E.D. Pa. 2012).

In the present matter, the Henry Clay Township Subdivision and Land Development Ordinance requires that violators of the ordinance should be afforded a certain procedure. The procedure is as follows:

> A letter sent to the violator stating the violation to the ordinance and that a reply is required within (20) days of the mailing date. If within the (20) day reply period no reply is given then a letter written by the Township Solicitor will be sent to the violator and a new (20) day reply period will be given. If a reply is not received within the reply period; a final letter stating that legal action may be enforced shall be sent to said violator and given a final twenty (20) day time period to reply before legal action may be enforced.

(ECF No. 36-5). Plaintiff does not allege that he ever received any notice letter, nor was he allowed any opportunity to reply. Plaintiff alleges that "on or about September 9, 2024, Zoning Officer Tammy Stenson sent a letter to Plaintiff revoking his occupancy and zoning permits '"effective immediately."' (ECF No. 1, at ¶ 41). Plaintiff further alleges that he was provided no

13

advance notice before his zoning and occupancy permits were revoked. (*Id.* ¶ 45). Taking the facts alleged as true, Plaintiff has sufficiently pleaded that the Defendants did not follow the proper procedure as codified within the relevant County ordinance when they issued the cease-and-desist letter to Plaintiff and revoked his zoning permit. Plaintiff is challenging the *revocation* of his zoning and occupancy permits in this matter, and Plaintiff has sufficiently alleged facts to support his claim that the requisite procedures were not followed. As such, Plaintiff has alleged sufficient facts to establish a Fourteenth Amendment procedural due process claim against Defendants at this stage. Defendants Motions to Dismiss, as to Plaintiff's Fourteenth Amendment Procedural Due Process claims, at Count II of the Complaint, will be denied.

### D. Equal Protection Clause Claims

Plaintiff brings Fourteenth Amendment Equal Protection Clause claims against Defendants. Defendants argue that Plaintiff fails to allege sufficient facts to establish that his Fourteenth Amendment Equal Protection Clause rights were violated, because Plaintiff does not plead facts to show how he was treated differently from similarly situated individuals. (ECF No. 36, at 15-16); (ECF No. 34, at 11-12). Defendants further argue that Plaintiff's allegations, related to this claim, are bare and conclusory. (*Id.*). Plaintiff argues that he alleges sufficient facts to establish an equal protection clause claim. (ECF No. 37, at 13-14); (ECF No. 38, at 8-9).

The Equal Protection Clause of the Fourteenth Amendment requires that all people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection clause claim under a "class of one" theory, a plaintiff must allege, "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Plaintiff again relies on the Third Circuit's reasoning in *Ecotone Farm* to support that his allegations are enough to establish an equal protection clause claim at this stage. In *Ecotone Farm*, the Third Circuit reversed the district court's dismissal of plaintiff's "class of one" equal protection clause claims where the plaintiff alleged that "other proximate and/or similarly situated properties were not accorded the treatment suffered by Plaintiffs and complained herein," and those allegations were "made plausible by the totality of the complaint, which described a pattern of unjustified harassment." *Id.* The Third Circuit continued their reasoning, stating, "under those circumstances, specific descriptions of others similarly situated are not required at the pleadings stage." *Id.* In this case, Plaintiff alleges that "Plaintiff has been intentionally treated differently by all named Defendants, as alleged herein, from others similarly situated to Plaintiff in Henry Clay Township." (*Id.* ¶ 37). Plaintiff argues that, given the totality of the circumstances described in the complaint, specifically, the unjustified harassment that he alleges was directed towards him by Defendants, is enough to properly allege a class of one equal protection clause claim. County Supervisor Defendants argue in their Reply that the circumstances alleged in *Ecotone Farm* were much more detailed than those in the present case. While the Court agrees that the allegations in *Ecotone Farm* were more specific, such does not necessarily mean that the present allegations are not sufficient at his stage of the proceedings. Considering the totality of the complaint, Plaintiff has alleged that Defendants singled him out and took zoning actions against him based upon personal motivations of the Defendants. At this stage of the litigation, and persuaded by *Ecotone Farm*, such allegations are enough to support a sufficiently pleaded Fourteenth Amendment Equal Protection Clause claim.

Accordingly, Defendants Motions to Dismiss Plaintiff's Equal Protection Clause claims, at Count III of the Complaint, will be dismissed.

### E.  Abuse of Process and Civil Conspiracy to Commit Abuse of Process Claims

Plaintiff brings state Abuse of Process and Civil Conspiracy to Commit Abuse of Process Claims against all Defendants. Defendants argue that Plaintiff fails to allege sufficient facts to establish an abuse of process claim, because Plaintiff pleads only conclusory statements and does not allege that Defendants initiated any process for an illegitimate aim. (ECF No. 36, at 20); (ECF No. 34, at 19). Plaintiff argues that he has alleged sufficient facts to show that Defendants initiated and carried out the zoning procedures, because of their own ulterior motives and not pursuant to the procedures' intended purpose. (ECF No. 37, at 10).

The tort of "abuse of process" is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998). "To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.* " The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." *Id.* "[E]fforts to harass and cause financial and emotional injury" are "illegitimate in the context of any civil proceeding in Pennsylvania." *Id.* To support an abuse of process claim, a plaintiff must show "'[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process ...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.'" *Id.* (citing *Di Sante v. Russ Financial Co.,* 380 A. 2d 439, 441 (Pa. Super. Ct. 1997). The Pennsylvania Superior Court has described illegitimate motivations as extortion, blackmail,

16

or coercion of a plaintiff to take some collateral action. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. 1994).

Plaintiff alleges that Defendants initiated legal processes against Plaintiff such as (1) a magisterial citation against Plaintiff for alleged zoning violations; (2) civil action for fines for alleged zoning violations; (3) revocation of Plaintiff's zoning and occupancy permits; and (4) issuance of a cease-and-desist letter prohibiting Plaintiff from operating his business. (ECF No. 1, at ¶ 80). Plaintiff alleges that all Defendants acted individually or collectively to initiate proceedings against Plaintiff each for their own personal benefit. Plaintiff alleges that Defendants had various personal motivations for such actions: First, Plaintiff alleges that Defendant Hartman initiated the process against him, because of Plaintiff's ongoing litigation with Defendant Hartman's parents. Next, Plaintiff alleges Defendant Bates was motivated by his competing automotive sales business. Finally, Plaintiff alleges that Defendants Holstetler and Stenson were motivated by their need to "stay in the good graces" of Defendants Hartman and Bates. (ECF No. 1, at ¶ 81(a)-(c)).

However, Plaintiff does not allege any facts to show that any Defendants threatened Plaintiff or engaged in any sort of blackmail, extortion, or coercion. *See Al Hamilton Contracting Co.*, 644 A.2d at 188. The allegations made by Plaintiff describe personal motivations on Defendants' part, or possibly even bad intentions; however, bad intentions alone are not enough to establish an abuse of process claim where the process itself was carried out to its authorized conclusion. *See Shiner*, 706 A.2d, at 1236. The processes themselves seemed to be carried out to their authorized conclusion based upon the present allegations. Thus, Plaintiff fails to allege facts to establish an abuse of process claim. Further, Plaintiff fails to sufficiently plead any conspiracy to commit abuse of process claims. *Raneri v. DePolo*, 441 A.2d 1373, 1376 (Pa. Cmwlth. 1982)

(under Pennsylvania law, when a party fails to sufficient allege the claim upon which the conspiracy claim is based, said conspiracy claim must also fail).

As such, Defendants' Motions to Dismiss Plaintiff's abuse of process and conspiracy to commit abuse of process claims, at Count VI of the Complaint, will be dismissed. As the Court cannot say that amendment would be futile, Plaintiff is granted leave to amend these claims.

### III. Conclusion

For the reasons above, Defendants' Motions to Dismiss will be granted in part and denied in part. Defendants' Motions to Dismiss Plaintiff's Fourteenth Amendment Substantive Due Process claims, Procedural Due Process claims, and Equal Protection Clause claims, at Counts I, II, and III, will be denied. Defendants' Motions to Dismiss Plaintiff's Abuse of Process and Civil Conspiracy to Commit Abuse of Process claims, at Count VI, will be granted, with leave to amend. Plaintiff has until on or before September 26, 2025 to file an amended complaint. Defendants have until October 10, 2025 to respond to any amended complaint, or if no amended complaint is filed, answer the original complaint. A separate order to follow.

DATED: September 12, 2025_

Marilyn J. Horan
United States District Judge